Walker, and I have on with me Justice Michael B. Hyman and Justice Celia Gamberth, and we are ready to get started. I would like to ask if the appellant could first introduce yourself and then we'll have the appellee do the same and tell us if you want to save any time for a rebuttal for the appellant. My name is Rebecca Levy from the Office of the State Appellate Defender on behalf of Mr. Glenn Robinson, and I would like to save two minutes for rebuttal, please. Okay, so you'll have 18 minutes plus two minutes for rebuttal and we'll go on to Ms. Reed. Hi, good afternoon. Assistant State's Attorney Kimberly Reed on behalf of the people. Okay, thank you, Ms. Reed. And Ms. Levy, if you're ready, you may go ahead and get started. Good afternoon, your honors. This court should follow people versus Durant and people versus Brown and find that Glenn Robinson does not qualify for a mandatory life sentence, for the mandatory life sentence he's currently serving as a habitual criminal under subsection A of the recidivism sentencing statute. Because Robinson was only 18 when he committed his first class X felony. And the legislature's 2021 amendment to the recidivism sentencing statute, which requires a defendant to have been at least 21 when he committed his first class X felony applies to Robinson. But Ms. Reed is arguing though that the amendment doesn't apply to him. That the amendment doesn't apply retroactively. Do you want to respond to that? In people versus Stewart, the Illinois Supreme Court made clear that it wasn't an issue of retroactivity. It was that the amendment clarified the statute. So it's they did the same. It clarified with Stewart address subsection B, which is the mandatory class X sentencing provision of the recidivism sentencing statute. For Robinson, he falls under subsection A, which is for the mandatory life sentence. But the language applies to both equally. It's the same language. They were amended at the same time. So it clarified subsection A, just like it clarified subsection B. Ms. Levy, what about the significant change with A? Because the one statutory section that was written out of age 18 is different. That didn't exist in B. And when the 2021 amendment was put in effect, that section was stripped from A. Doesn't that make it a substantive amendment and not just a clarification? I don't think so. Because subsection, the language regarding that was taken out with the amendment to subsection in the 2021 amendment had only been put in there, had only been added to subsection A in 2016 with an amendment that was not specific to the recidivism sentencing statute. That amendment was made systematically by the legislature across the sentencing code to comply with Roper and Miller so that no juvenile, no one under the age of 18 could be sentenced to a mandatory life sentence for a non-homicide offense. So the legislature went through this entire sentencing code and added basically, systematically added a caveat reminding sentencing courts that they could not sentence someone under the age of 18 to a mandatory life sentence for an offense that was not a homicide. But from the beginning of the recidivism sentencing statute. So that was, in your view, just a reminder, doesn't really have any teeth? Because in my view, that 2016 amendment had a lot of teeth. Before that, the statute didn't clarify or didn't say age 18. It gave no age whatsoever. And so in 2016, if you read A, that implies to me that the first offense could certainly be below age 18. When 2021 came along, that was no more. Doesn't make it a substantive change. Well, the 2021 amendment clarifies both. I mean, the 2016 amendment and what the statute had been previously. The statute never, until 2021, it never listed an age, specifically listed an age that the defendant had to have been by at the time of the first offense. Under either subsection A or B. So that's why it's clarifying in the same way for both of them. Under the reasoning of Stewart, it applies to both because it clarified an age for the first offense for both subsections. I think just to clarify and re-emphasize something you said, in 2016, the legislature was complying with the United States Supreme Court rulings that had come down. It was making sure throughout Illinois criminal law that it was uniform with regard to the United States constitution. Am I correct? Correct. It was not specifically to A or B. They were even talking, it was a crossword for everything. And then in 2021, there were changes to both A and B. Correct. Consistent. And so there's a big difference between what happened in 2016 and what happened in 2021 under what you're saying. Is that correct? Exactly correct. The nature of the 2016 amendments evinces no legislative intent specific to the habitual criminal sentencing scheme under the recidivism statute. Like I said, the legislature was systematically amended all sentencing statutes to not allow for a defendant to be sentenced to a life sentence for a non-homicide offense if they were not 18 yet at the time it was committed, which is applied with various statutes. I cited them, I believe, in my opening brief. It was not specific to this, but the amendment in 2021 was specific to this statute and it was in response to, as Sue explained, it was in response to the split in the appellate court over how to interpret it. So why was the 2016 amendment not put in B? If you want us to read A and B the same, why was the 2016 amendment not put in B? Because B would not result in a mandatory life sentence for a non-homicide offense for a juvenile offender. It didn't apply to B because a class X offense, the max sentence is 30 years, but subsection A required a mandatory life sentence for a third class X offense, which could have applied to a juvenile. And the legislature with the 2016 amendment and the 2021 amendment made sure that they're excluded. But A and B are different. They're different in terms of how, of the ultimate sentence, yes. So doesn't it make sense that even though the 2021 amendment uses the same language, it has a different effect on A versus B? It doesn't because they both clarify, prior to 2021, neither statute, neither subsection had, they were both silent as to the age the offender had been at the time of the commission of the first offense. So 2021 clarified it for the first time for both of them. Was A really silent because of a 2016 amendment? The 2016 amendment doesn't, I mean, the 2021 amendment doesn't conflict with the 2016 amendment. It just makes it more, it clarifies it even more. And that, like I said, the 2016 amendment was not specific to this statute. It was across the board to all sentencing schemes where a juvenile could have received a mandatory life sentence for a non-homicide offense. This made it even more clear that the defendant has to have been 21 when they committed the first offense. So, like, for that reason, the order of the 2021 amendment, it clarified B and A in the same way, at the exact same time, in the same manner, at the same age, and with the same language. And because the amendment was a clarification, the age was always 21. And this clarification goes all the way back to the enactment of this beginning of the statute. For that reason, we're asking that this court follow Stewart and Durand and apply Stewart to this case as well. What is your response to Smallwood and Fuller? Smallwood and Fuller, we, I think we're just, the analysis in Durand just makes more sense. Illinois courts have always said that the language, the Illinois courts have always said that identical language appears in different sections of a statute, of the same statute, should be given the same meaning and effect. So, Fuller and Smallwood don't heed that law or that clear law in Illinois. Is there any other questions we're asking that this court remand for resentencing or alternatively remand for new second stage, or for second stage proceeding with another post-conviction act? What about the first stage, his attachment with regard to his age? The judge rejected that. His age is, sorry, go ahead. Yeah, so how should we resolve that? Does that need to go back for second stage? Would that be a waste of effort? I mean, his age doesn't matter. This court can take judicial notice of his age. I think I asked in my opening brief, I mean, his age is from the, it's in the PSI, it's on the Department of Corrections website, which this court does take judicial notice of. It doesn't need to go back for second stage, just like it didn't need to go back for more proceedings in Durand. But alternatively, this court could remand for second stage proceedings. Thank you, Ms. Levy. Ms. Reed? May I please the court? We're asking to affirm this decision. Smallwood and Fuller are important to consider here, just because both of those cases provided more of an analysis that was consistent to the analysis laid out in Stewart. But they go against the concept that has been with us for decades, that particularly in the same statute, the same language should not be read differently. The legislature would never consider that. Why would that be considered here? Well, that is a consideration when we're looking at statutory interpretation. There are also other considerations that can be made. And so that's why it's important that looking at these Stewart factors, none of them are met here for subsection A as they were in subsection B. The history is vastly different between these two subsections. Why do you say that? Because of 2016? Is that the only basis? Well, to start, they were two separate statutes until 2009, when they were finally put under one. But at that point, neither had changed. So subsection A still had no age restrictions on or age qualifications or elements on any part of it. Prior to the 2016 version, it was consistently applied in court, such as in the first decision in Banks, and I believe it was Bryant, or one of them was the first district. Banks and Bryant both found that juvenile offenses did qualify as predicate offenses. But that was before the changes in the Supreme Court and other courts across the country and courts. That is correct. So you have to concede that the law has been changing in this area in the last two decades. Since those two cases, yes. But then if we go further around the time of Miller and Graham discussing how we should treat juvenile offenses, or how we should sentence juveniles, you also have the cases of Lawson, Simmons, Byrd, and Byrd that held that Proportionate Penalties Clause was not violated where juvenile convictions were properly used as predicate offenses. And this was all around the time of right before the 2016 amendment and right after the 2016 amendment. So these are all very things that need to be considered here as why this history is vastly different from Subsection B and why Stewart cannot apply in the same manner. Then you have the 2016 amendment, and while yes, that is in response to Miller and subsequent cases from Miller, it also acted as the original clarification, as pointed out in Smallwood, it was the original clarification that juvenile offenses could still qualify as predicate offenses as so long as the offender was over 18 for that third offense. And that stayed in line with what the prior case law was in how all these predicate offenses were treated. That makes it just a huge distinction from Subsection B saying the same. Subsection B had conflicts among the courts of how it was applied. That was not the same. Why would the legislature use identical language in the same act for both subsections? Knowing what they know, I mean, you're getting down in the, we need to look at the whole history and all these other things. The legislature is not all that aware of all that. And they're just saying, look, same language. And that's why we have that admonition as to how we would interpret when a legislature uses the same language, within sections of the same act. And so to avoid that, you're saying, all this other things that come in, which, where, give me some legislative history that says that. Is there anything else other than your arguments that say that, the cases say it, but the two cases, but other than that, I mean, they came up with this, but they ignore the fact that they're identical. I think that's where we can definitely fall into looking at the legislator's intentions through the public act itself, 101-652, that did amend this. And putting in the similar language, Justice Overstreet in his Stewart dissent addressed this. And looking at it. So Stewart is helpful here. For Justice Overstreet's dissent in Stewart, yes. As it pertains to what the legislator was thinking in making these sections now uniform. Right. So Justice Overstreet, this is a, I'm sorry, go ahead. This is a first stage dismissal. And so your claim basically is that the claim is, you're arguing that the claim is fervorless and patentless without merit. And Ms. Levy is saying to us that even if we don't order the trial court to re-sentence him, that we should still send it back for a second stage proceedings. You want to respond to that? If we say we partly disagree with her and partly disagree with you, what do you suggest? Based on looking at the legislative history, based on especially now having Smallwood and Fuller that do this more consistent Stewart analysis, there should be no reason to remand for further proceedings. But you can't avoid the fact that there is a split right now. So just as much as you want to say Smallwood and Fuller make it clear, we do have Durant and Brown. So, I mean, it seems to me that, you know, a dismissal at first stage, which is a really low standard, that at least a defendant similarly situated should, you know, get his or her case heard. Can you really say that dismissal should be affirmed? And if it's not, what's the remedy? Again, based on our arguments, the dismissal should be affirmed. Do you concede and stipulate that Fuller was under 21 at the time of the first offense? That Mr. Robinson was under 21 at the first offense? Yeah. Okay. Sorry, just to make sure I'm understanding. Based on, I think we'd have to follow what the circuit court looked at, that there was nothing in the record to actually- Why do we have to follow the circuit court? We're doing a review here. Correct. We don't have to follow the circuit court. Okay. Just clarification again. Go ahead. As our position would be that we would have to follow the circuit court in their decision of- That wasn't the question. That wasn't the question. The question is, do you concede? We would not concede, no. And why won't you concede it? Where is there a question that he wasn't 21? That means you have a question to it. And you're a... Where is that question? You don't know that? You don't know that he was under 20? There's public records. There's the record in this case. I mean, we've saw things that in the first stage, I mean, what he attached. Is there any question that he wasn't 21? Are you saying there is a question? On what basis do you say that? Tell us how you say that. Well, he provided documents that had his birthday on it. Agency documents. Yes. I believe in some of those documents, if I remember correctly, there were a couple birth dates that were different. So I don't know if it would be a question for that. I didn't see that in the record. I didn't see that in the record. I mean, we can go online right now. You can go online regarding his incarceration and see what the date is that they have for him, right? And we can take judicial notice of that. Are you saying that the judge can't take judicial notice? I mean, if a judge makes a mistake, I mean, you can agree to agree with the judge's mistake, but we don't have to do that. And so I'm just trying to, are we wasting our time sending it to a second stage? And I'm trying to understand why beyond agreeing with the judge, because you like the result, we would send it to a second stage. Where is there a question about his age that can't be affirmed by us taking judicial notice? This court can certainly take judicial notice of it, if that's the route it's going to go. But why should we? You're saying we should. I'm not saying we will or we won't. I want to know why you say we shouldn't do that. If it's in the realm of, for a reason of why to remand this for a second stage, which there is no reason to remand for a second stage. That isn't the question. You keep going back to that. That's not what we're discussing right now. We're just discussing his age. I understand that, Your Honor. In this hypothetical of if this is remanded for a second stage, that could be a concern that's brought up. Or that could be something that is, that can cause the remand for the second stage. Or that could be something that the court takes judicial notice of. What is it? What is it? His age during his first offense. Right. And so Ms. Levy argued in her brief that we, and we agree with her, that we can take judicial notice of the Department of Corrections website as to his age. And we want to know, do you agree with that? That we can take judicial notice of that? Yes, that's something that the court can absolutely do. The age issue can easily be resolved. When you say you don't know if he was 21 or under the age of 21. Is that still your position? Again, like, we don't know that for sure. But yes, this court can take judicial notice that that is what certain documents have shown. And that is fine. This still comes back to the fact that in looking at a steward analysis, Smallwood and Fuller provided that more consistent analysis. And that is why Smallwood and Fuller should be applied here. And that is what it really comes down to, to affirm this decision. And why should Durant not be followed? Well, Durant does take one position from this court. Again, that it did more of a blanket agreement with Stewart for applying Stewart's conclusion. But again, I will go back to, again, Smallwood and Fuller, more consistent analysis. But you were answering my question, I thought, about, we're talking about Durant right now. We want to talk about Smallwood and Fuller, but we want to talk about Durant. So why should Durant not be followed? Just, I mean, if you've got a reason, tell us, please. Yes, Durant did not apply an actual Stewart analysis versus Fuller and Smallwood actually exploring the three factors of there being no declaration from the legislator that the 2021 amendments were clarifying for subsection A. There were no conflicts among the courts prior to 2021 for subsection A. And the history between the legislative and case law history of subsection A supports that the 2021 amendment was not clarifying. It was a substantive amendment changing what predicate offenses would apply. But doesn't the holding in Stewart apply here? Why wouldn't that holding apply? That's the Supreme Court of Illinois. Correct. Well, the holding of Stewart, the holding itself, applies specifically to subsection B. I understand. And we're talking about a different section. But why won't we follow that when this language is exactly the same and the intent of the amendment is exactly the same? And the rest of the quotes, Stewart. Correct. But the big difference, though, is that it doesn't apply that analysis from Stewart. Again, both Smallwood and Fuller do apply that analysis. And that is why it's important for looking at subsection A to apply that analysis instead of just blanket saying, oh, these will be the exact same. We're just going to apply them the exact same. Clearly, through the history, these two sections have never been applied exactly the same. Of course. But that ignores, we've gone through this, but we've talked about it with Ms. Levy, but that ignores the history of what happened here and how it developed first in 2016 and then in 2021, where the intents are extremely different by the legislature. You would agree with that? Do you agree the intent was different in 2016 than in 2021? The 2016 would be more of a clarifying amendment because that, while yes, it was part of this beginning of the change in how juveniles and youthful offenders are sentenced, it still acts as a clarifying amendment in 2016 because of the way that it's worded. Logically, you would have to follow that under the 2016 amendment, juvenile offenses, youthful offenses under the age of 21 would apply as predicate offenses. And that is consistent with the pre-2016 event or pre-2016 subsection A under which Mr. Robson here was sentenced. If that is clarifying of making sure that juveniles themselves are not sentenced, but now we're having that pre-2016 no longer exists, and this is pointed out, I believe in both in Smallwood and Fuller, because then it no longer existed, the 2021 amendment cannot be clarifying something that no longer existed. So it has to be a substantive statute change amendment to subsection A. It has to? Under our arguments, yes, and following Fuller and Smallwood. But again, there's a disagreement in the law, the case law on that. But yes, that has now arisen from... So I don't think it's as strong as you imagine it to be, considering there is a disagreement. Would you agree with that? Can you repeat that? I'm sorry. It isn't as strong an argument as you make it to be when you have cases on both sides going the other way. I disagree with that, just because of the way both Smallwood and Fuller went about actually applying that steward analysis to reach a different decision. I would just like to make a brief note that the Brown case before the Illinois Supreme Court has been fully briefed on this exact issue as well, and is currently set for oral argument next month, per my last knowledge, just as something to potentially consider here too. But otherwise, if there are no further questions, for all these reasons and those in our brief, we ask this court to affirm the decision below. Thank you. Thank you, Ms. Reed. Ms. Levy, you said you only needed two minutes, but you only used 15 minutes of your time before, so we will give you the full five minutes that you still have if you want to take it. I just have a very brief comment to make. Regarding the analysis and steward in terms of whether or not the 2021 amendment was clarifying as to subsection B, that same analysis applies to subsection A exactly. The court looks at whether the expressed that it was clarifying existing law, and they did not express that, Stewart found, for the 2021 amendment. But we also look to the time and the circumstance of the amendment, and they're identical in subsection A and B. The second factor the court looked at in Stewart is whether or not a conflict existed in the appellate court before the amendment was enacted. The court found that there was a conflict as a subsection B. There was no analysis done as A, but the same conflict that existed in subsection B necessarily also would exist as to A, because the conflict arose from a different amendment, a different 2016 amendment, to the Juvenile Court Act with extending the juvenile jurisdiction. So whether or not the predicate qualifying offense under A and B would run into the same problem under A with the new amendment. Stewart talks about the conflict in terms of subsection B, but it cites two people versus Miles in Reed, because those two cases decided that the subsection B opposite. And Miles in Reed, at least Miles discusses cases that have interpreted subsection A. I believe the state pointed out that it discussed Bryan and Banks, and in Miles, the court expressed that the same problem would arise for subsection A. But it isn't a tick-tock, and is there any cases that you're going to that show a conflict? So I know what Miles said, but the issue in front of Miles was section B. It mentions A and says this would have been different, but nobody else has said that, and that wasn't the issue in front of the court in Miles. So could you point to us any cases in the appellate court where there was a conflict like there was in subsection B? Not at the time that the amendment, the 2021 amendment, was made, but the same conflict would have arisen. It would have been the same problem with the age of the prior predicate offenses. But don't look at the legislative intent, because if there is a conflict, the legislature steps in and seemingly resolves it. So if there's no conflict, can we really use that same analysis for A, where there has been a steady stream of cases, none of which have conflicted? I guess I want to say that there was a conflict in terms of that it was the same conflict. It just hadn't been expressed as to A. But the conflict is how old the person had been at the time of the first offense, and that still was not clarified in the 2016 amendment. And so the same analysis in Stewart as to the conflict applies entirely to subsection A. And then the third factor that the courts look at is whether the amendment is comparable with reasonable interpretation of prior law and legislative history. And then, like I said earlier in the prior, it's subsection A and B are comparable in exactly the same way in terms of the analysis in Stewart. So Ms. Levy, if you want to go ahead and wrap up, you're actually now out of time. I gave you the two minutes you asked for plus the additional three minutes that you didn't ask for. So if you want to just wrap up, please. Yes, we're asking this court to remand for resentencing, to follow Durant and Brown and remand for resentencing, and alternatively to remand for a new second stage proceedings under the Act, please. Thank you. Thank you. We thank you both for your arguments. You both argue well, and we do appreciate that. We appreciate excellence. So continue to do well. And again, thank you. Thank you, everyone. Have a good day. Thank you.